UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                                    :
AXIS CAPITAL, INC.,                                 :
                                                    :        CASE NO. 1:08-CV-2782
            Plaintiff,                              :
                                                    :
        v.                                          :        OPINION & ORDER
                                                    :        [Resolving Doc. Nos. 70, 71, 76, 77, 78, 79.]
KAZ PAVING, INC., *et al.*,                         :
                                                    :
            Defendants.                             :
                                                    :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Tiger General, Inc., Mark Overholt, and John Malbin have moved for summary

judgment on Plaintiff Axis Capital, Inc.'s fraud and civil conspiracy claims against them. [Doc. 70;

Doc. 71.]  With this opinion and order, the Court **DENIES** the motions.

Plaintiff Axis brought this action to recover damages it claims to have suffered as financier

of two truck sale transactions that it alleges were shams.  [Doc. 1 at ¶¶ 10, 15, 19, 24.]  In both

transactions, Plaintiff Axis says that the nominal "buyer" actually owned the trucks before the

transaction but transferred title to the nominal "seller" (for no consideration) to make the sale appear

legitimate.  [Doc. 1 at ¶¶ 14-16, 25-29.]  The buyer and seller then split the purchase price financing

that Plaintiff Axis provided.  [Doc. 1 at ¶¶ 15-17, 29, 41, 70.]

In addition to its breach of contract claims against the borrowers, Plaintiff Axis asserts fraud

and conspiracy claims against the Defendants here, who were other participants in the scheme not

in contractual privity with the Plaintiff.  [Doc. 1 at ¶¶ 30-60, 66-80.]  The Plaintiff's theory is that

Case No. 1:08-CV-2782
Gwin, J.

these Defendants made statements on the trucks' title certificates and invoices falsely indicating who

owned the trucks to induce the Plaintiff to provide financing for the sham transactions.  [Doc. 1 at

¶¶ 15-17, 23, 29.]  Through these fraud and conspiracy claims, the Plaintiff seeks to recover the

funds it loaned for the truck purchases, punitive damages, and attorney's fees.  [Doc. 1 at ¶¶ 42, 44,

51, 73, 79, 80.]

John Malbin, Tiger General, Inc., and Mark Overholt, the defendants named in Plaintiff

Axis's fraud and conspiracy claims, now move for summary judgment on those claims on three

grounds.  [Doc. 70; Doc. 71.]  First, the Defendants argue that they had no communications with

Plaintiff Axis before Axis agreed to finance the allegedly fraudulent transactions, so Axis cannot

establish that it relied on any supposed misrepresentation by the Defendants—an essential element

of a fraud claim.  [Doc. 70 at 10-11; Doc. 71 at 13-15.]  Second, the Defendants contend that

Plaintiff Axis cannot establish any damages caused by the Defendants' supposed fraud that are

distinct from its breach of contract damages.  [Doc. 70 at 11-13; Doc. 71 at 15-16.]  Finally, the

Defendants argue that Plaintiff Axis's civil conspiracy claims fail because, as a result of these two

deficiencies in the fraud claims, Plaintiff Axis cannot identify any unlawful acts apart from the

conspiracy.  [Doc. 70 at 13; Doc. 71 at 17-18.]

## I. Facts

Plaintiff Axis Capital, Inc. brought this action in its role as a lender who financed two

commercial sales of heavy equipment.  [Doc. 1.]

Axis alleges that both transactions were a fraudulent scheme to induce Axis to provide risky

loans. On Axis's theory, the scheme worked as follows:  The true legal owner of equipment subject

to security interests sought financing from Axis to "buy" the equipment it already owned from a

Case No. 1:08-CV-2782
Gwin, J.

third-party "seller." The "buyer" (the true owner) and "seller" then drew up documents falsely

indicating that the seller owned the equipment free of any security interests, and the buyer provided

these documents to Axis. Axis claims that it relied on these documents in agreeing to loan the

purchase money to the buyer in exchange for monthly payments on the loan and (what Axis

erroneously believed to be) an unsubordinated security interest on the equipment.

According to Axis, in the first transaction, Mark's Akron Medina Truck Sales, Inc. (a

defendant in this action but on the sidelines in these summary judgment proceedings) was the

nominal seller of a 2007 Terex TA-30 Articulated Truck to Kaz Paving, Inc. (also a defendant not

involved in this summary judgment motion). [Doc. 1 at ¶ 9.] Raintree Enterprises LLC brokered

the deal, contacting Axis in February 2008 about the possibility of financing the purchase. [Doc. 76,

Ex. 3 at 252.] On February 21, 2008, Axis entered into a finance agreement in which it promised

to loan Kaz $175,000 to purchase the Terex in return for Kaz's promise to make 60 monthly

payments of $5,396.54.[1] [Doc. 76, Ex. 3 at 363; Doc. 76, Ex. 7 at 41.] One week later, on February

28, 2008, Defendant John Malbin, the owner of Mark's, drew up an invoice indicating that Mark's

was the "Seller" of the Terex to Kaz. [Doc. 76, Ex. 7 at 44.] However, Axis contends that in reality,

Kaz owned the Terex all along; Mark's never had possession of the Terex. [Doc. 76, Ex. 4 at 123-

24.] Kaz forwarded the invoice to Raintree, who passed it along to Axis. [Doc. 76, Ex. 3 at 363.]

Once Kaz received the $175,000 from Axis on February 29, 2008, Kaz split the proceeds with

---

[1] In the event of default, Kaz promised to accelerate the remaining payments and interest, to return the Terex, and to pay Axis's collection costs and attorney's fees. [Doc. 76, Ex. 7 at 41-42.]

Case No. 1:08-CV-2782
Gwin, J.

Malbin and Mark's.[2/]  [Doc. 76, Ex. 4 at 119-20.]

The second transaction was for two 2001 Mack CH 600 Dump Trucks.  This time, Mark's was the nominal buyer of the trucks from Defendant Tiger General, Inc. [Doc. 76, Ex. 4 at 70.]  On July 15, 2008, Raintree entered into a finance agreement in which it promised to loan Mark's $100,000 to purchase the Mack trucks in exchange for 24 monthly payments of $4,947.03.[3/]  [Doc. 76, Ex. 7 at 37.]  Later that day, Raintree assigned its rights in the finance agreement to Axis, and three days later, on July 18, Axis provided the $100,000 loan to Mark's.  [Doc. 1, Ex. 8; Doc. 76, Ex. 3 at 91-92.]  But as with the Terex sale, Axis contends, the entire transaction was a sham; at all times, Mark's retained legal ownership of both trucks.  [Doc. 76, Ex. 7 at 18-29, 30-36; Doc. 76, Ex. 11 at 8-19, 20-26.]  Mark's, together with Tiger General and Overholt, prepared fraudulent titles to the trucks and a fraudulent invoice indicating that Tiger General owned the trucks, and Mark's provided these documents to Raintree, who then sent them to Axis.  [Doc. 76, Ex. 2 at 18-19.]  Once Axis wired the loan funds into Tiger General's account, Tiger General and Mark's split the funds.  [Doc. 76, Ex. 11 at 29.]

In both transactions, the borrower has defaulted and creditors with superior security interests have repossessed the equipment.  In this action, Axis brought breach of contract claims against the borrowers and guarantors.  Additionally, Axis brought fraud and conspiracy claims against the nominal "sellers" of the equipment in the two transactions—John Malbin, Tiger General, and Mark

---

[2/]On April 8, 2009, John Kasmerski, the owner of Kaz and a defendant in this action, pled guilty to felony wire fraud for his role in fraudulent equipment financing schemes.  [Doc. 76, Ex. 9.]  He has since filed for bankruptcy, resulting in a stay of Axis's claims against him.

[3/]In the event of default, Mark's agreed to accelerate the remaining loan payments and late fees, to return the Mack trucks, and to pay Raintree's collection costs and attorney's fees.  [Doc. 76, Ex. 7 at 37.]

Case: 1:08-cv-02782-JG  Doc #: 84  Filed: 11/04/09  5 of 13.  PageID #: 1855

Case No. 1:08-CV-2782
Gwin, J.

Overholt—who now move for summary judgment on those claims.

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A defendant moving for summary judgment has the initial burden of showing the absence of a genuine factual issue with respect to one or more essential elements of the plaintiff's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving defendant meets his burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving defendant is under no "express or implied" duty to "support [his] motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving defendant satisfies his burden, the burden shifts to the nonmoving plaintiff to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving plaintiff may not defeat the summary judgment motion merely by showing some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving plaintiff rely upon the mere allegations or denials of her pleadings. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970). To be sure, the Court need not conclusively resolve an allegedly disputed issue

-5-

Case No. 1:08-CV-2782
Gwin, J.

in favor of the nonmoving plaintiff; rather, the plaintiff must present "sufficient evidence supporting

the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of

the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968).

Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### III.  Legal Analysis

#### A.  Existence of Representations in the Mack Trucks Transaction

With respect to the Mack trucks transaction, the Defendants argue that there is no evidence

that Axis received the allegedly fraudulent documents until after it had loaned the money—and thus

Axis could not have relied on any supposed misrepresentation by the Defendants.  [Doc. 70 at 11.]

In support of this argument, the Defendants point to the testimony of Dean Rubin, Axis's

representative, that he was unsure whether Axis had received the title certificates before July 21,

2008. [Doc. 79, Ex. 1 at 176:16 - 177:11 ("Q:  'Axis did not have copies of the original titles prior

to July 21, 2008, correct?'  A:  'I'm not sure.'"); Doc. 79, Ex. 1 at 179:24 - 180:20 ("Q:  'Do you

know when Axis obtained copies of [the titles]?'  A:  'I do not.'").]

In response, Axis points to three pieces of deposition testimony that raise a genuine factual

issue as to whether it received the titles or invoice before loaning the money.  First, Axis highlights

the following testimony of David Tunnell, Raintree's representative:

> Q:  Your testimony was you got copies of the titles for the two Mack trucks prior to
> the transaction that we are here today about, correct?
>
> . . .

Case No. 1:08-CV-2782
Gwin, J.

> A.  Yeah, we did.
>
> . . .
>
> Q:  When you got copies of the titles for the two Mack trucks before the transaction
> was consummated, did you send those titles to Axis?
>
> A:  Oh, yeah.

[Doc. 76, Ex. 2 at 19:1 - 19:4, 19:7, 19:15 - 19:19.]  A reasonable inference from this

testimony—and *a fortiori*, an inference favorable to Axis, the nonmovant—is that Raintree sent (and

Axis received) the titles before Axis funded the transaction.  Tunnell's testimony alone is sufficient

to create a genuine factual issue as to whether Axis received the titles before making the loan.

> Second, Axis points to the following deposition testimony of its representative, Dean Rubin:
>
> Q:  My understanding is that Axis funded the [Mack Trucks] transaction on July
> 18, 2008.  Do you know that to be true?
>
> A:  There were three pieces of paper there:  The wire, the title, and the invoice.  I
> just want to see them before I answer.
>
> . . .
>
> A:  Okay.  This one says Axis, it has a one, showing that I wired money out of the
> 18th of July.  There was one more that had the search.  These titles are dated the
> 15th of July, three days prior to the funding.

[Doc. 77, Ex. 6 at 91-92.]  Rubin testified that the title and the invoice were "there"—*i.e.*, in front

of him when Axis funded the transaction on July 18, 2008.  Taking this testimony as true, no

inference is necessary to conclude that Axis had received copies of the title before entering the

financing agreement.

> Third, Axis argues that Rubin testified that Axis relied on the invoice and the title certificates

in deciding to finance the transaction.  [Doc. 76 at 9 (citing Doc. 76, Ex. 3 at 216:24 - 217:6).]

Case No. 1:08-CV-2782
Gwin, J.

Rubin testified that "[w]e did rely on [the Tiger invoice and the two titles], and that's why we sent a $100,000 wire." [Doc. 76, Ex. 3 at 217:5 - 217:6.] If this bare conclusion were the only evidence Axis had adduced to show that it had the titles prior to financing, perhaps it would not be sufficient to create a genuine factual issue. However, when coupled with his more specific testimony about what Axis had before it when it funded the deal, as well as Tunnell's testimony that Raintree forwarded the titles to Axis, Rubin's testimony about Axis's reliance only contributes to the genuineness of the factual dispute.

In the alternative, Defendants Tiger General and Overholt argue that Axis cannot point to any evidence that they created, prepared, or signed the invoice or certificates of title to the trucks. [Doc. 70 at 10-11.] The Defendants rely on Overholt's affidavit, which denies that he or Tiger General prepared, created, signed, or executed the invoice or title certificates. [Doc. 70 at 10-11 (citing Doc. 70, Ex. 3 at ¶¶ 2, 3).]

Axis responds to this argument by pointing to the invoice itself, printed on letterhead that says "Tiger General, Inc." [Doc. 77, Ex. 9 at 19.] Axis also points to the title certificates, which list Tiger General as the owner at the time of the transaction. [Doc. 77, Ex. 9 at 8-19, 20-26.] Taking these representations as true and disbelieving Overholt's denials (as the Court must do in the summary judgment posture), it is reasonable to infer that these allegedly false representations came from Overholt or Tiger General.

The Defendants' arguments thus fail to show that Axis cannot, as a matter of law, demonstrate reliance.

### B. Reasonableness of Reliance on Commercial Documents

Additionally, the Defendants contend that Axis's claim fails because they had no

Case No. 1:08-CV-2782
Gwin, J.

communications with Axis—and thus made no representations on which Axis could have reasonably

relied, which is a necessary element for a fraud claim—until months after Axis consummated the

allegedly fraudulent transactions.  [Doc. 70 at 10-11; Doc. 71, Ex. 1 at 13-14.]

Axis counters this argument by contending that the Defendants' conduct falls into an

exception to the general rule requiring a direct defendant-to-plaintiff communication for reliance to

be justifiable.  Under § 532 of the Restatement (Second) of Torts:

> One who embodies a fraudulent misrepresentation in an article of commerce, a
> muniment of title, a negotiable instrument or a similar commercial document, is
> subject to liability for pecuniary loss caused to another who deals with him or with
> a third person regarding the article or document in justifiable reliance upon the truth
> of the representation.

Hence, Axis argues, if the Defendants created title certificates and invoices commemorating the

supposedly fraudulent transactions and provided them to parties who dealt directly with Axis, the

Defendants are subject to liability for Axis's resulting loss.  [Doc. 76 at 13-16.]  *See also*

Restatement (Second) of Torts § 532 cmt. b (1977) ("[T]he maker of a fraudulent misrepresentation

incorporated in a document has reason to expect that it will reach and influence any person whom

the document reaches.").

Apparently, no Ohio court has considered whether Ohio law recognizes this "commercial

document" exception.  The Defendants contend that this fact counsels against application of the

exception as a matter of first impression by a federal court sitting in diversity.  [Doc. 78 at 1.]  Axis,

in response, argues that Ohio courts frequently apply other sections of the Restatement (Second) of

Torts, and § 532 should be no different.  [Doc. 76 at 14 n.11.]

This Court believes that Ohio law would recognize the commercial document exception.

Ohio courts have cited and applied other sections of the Restatement, including sections enumerating

Case No. 1:08-CV-2782
Gwin, J.

the elements of a fraud claim.  *See, e.g.*, *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1084 (Ohio 1991)

(adopting § 525, which allows fraud claims based on conduct, not just spoken or written words).

And other courts have recognized the Restatement as widely accepted.  *See, e.g.*, *Field v. Mans*, 516

U.S. 59, 70 (1995).  Moreover, the commercial document exception has an intuitive appeal: Because

the very purpose of these types of commercial documents is to allow third parties to rely the

information they convey (at least when there is no apparent reason to doubt their veracity), it is

reasonable for the creator of the documents to expect that they will reach parties other than those

with whom the creator deals commercially.  *See* § 532 cmt. c; *see also Crown Prop. Dev., Inc. v.*

*Omega Oil Co.*, 681 N.E.2d 1343, 1349 (Ohio Ct. App. 1996) ("Reliance is justified if the

representation does not appear unreasonable on its face and if, under the circumstances, there is no

apparent reason to doubt the veracity of the representation.").

The title certificates and invoices allegedly prepared by the Defendants fall within the scope

of this commercial documents exception.  The Restatement specifically names "muniment[s] of

title," which Black's defines as "[d]ocumentary evidence of title, such as a deed . . . ."  Black's Law

Dictionary (8th ed. 2004).  And an invoice, like a receipt or a deed, exists not only to remind the

parties to a transaction of its terms; its purpose is also to provide evidence of those terms to third

parties who come across the invoice in commercial dealings (as any employee submitting an invoice

for reimbursement knows).

The Defendants have thus failed to show that, as a matter of law, Axis cannot establish that

it reasonably relied on the invoices and title certificates.

### C.  Distinct Fraud Damages

Finally, the Defendants argue that Plaintiff Axis may not maintain its fraud claims because

Case No. 1:08-CV-2782
Gwin, J.

it has not pled any fraud damages distinct from its contract damages. [Doc. 70 at 11-13; Doc. 71,

Ex. 1 at 15-16.]  In response, Axis contends that its fraud damages are different in amount than its

contract damages and that it suffered them at the hands of different defendants. [Doc. 76 at 17-18;

Doc. 77 at 15-16.]  In particular, on the Terex transaction, the Plaintiff seeks contract damages

against Defendants Kaz Paving and Kasmerski for the remaining payments, as well as interest, late

fees, collection costs, and attorney's fees. [Doc. 76 at 17.]  The Plaintiff seeks fraud damages on the

Terex transaction against Defendant Malbin to recover the monies it paid to finance the Terex

purchase, as well as punitive damages and attorney's fees. [Doc. 76 at 17.]  Likewise, on the Mack

Trucks transaction, the Plaintiff seeks contract damages against Defendants Mark's and Malbin for

the remaining payments, as well as interest, late fees, collection costs, and attorney's fees. [Doc. 76

at 18.]  The Plaintiff seeks fraud damages on the Mack Trucks transaction against Defendants

Malbin, Tiger General, and Overholt to recover the monies it paid to finance the Mack Trucks

purchase, as well as punitive damages and attorney's fees. [Doc. 76 at 18.]

Plaintiff Axis Capital wants to have its cake and eat it, too.  Under the doctrine of election

of remedies, a party may not recover damages based on inconsistent theories.  More particularly,

"because affirmance and disaffirmance, as remedies for the redress of fraud, are alternative and

mutually inconsistent, a victim of fraud cannot both affirm and disaffirm and cannot pursue both

remedies to a final conclusion." 37 Am. Jur. 2d *Fraud and Deceit* § 362 (2009) (citing, *inter alia*,

*Bennice v. Bennice*, 612 N.E.2d 1256 (Ohio Ct. App. 1992)).  By retaining loan payments under the

contracts, and by asserting damages for breach of contract, Plaintiff Axis has elected to affirm the

contracts at issue in this case. [Doc. 1.]  That election prohibits Axis from simultaneously seeking

fraud damages based on disaffirmance of those contracts.  In other words, Axis may not also seek

-11-

Case No. 1:08-CV-2782
Gwin, J.

to recover the consideration it gave to enter those contracts.

However, election of remedies does not prohibit Axis from recovering fraud damages founded on affirmance of the contracts—*i.e.*, damages for Axis's loss of the benefit of the bargain. *See Bennice*, 612 N.E.2d at 1259 ("[A] suit for damages [for fraud] is founded on an affirmance of the contract 'only if, and in so far as, the damages sought to be recovered consist of the loss of the benefit of the bargain.'") (citations omitted). Moreover, if Axis prevails at trial on its breach of contract claims as well as on its fraud claims, the Defendants may be jointly and severally liable for those damages. And if Axis succeeds at trial on its fraud claims, it may be able to recover punitive damages against the Defendants. Therefore, summary judgment for the Defendants on this basis is inappropriate.

Thus, the Court **DENIES** the Defendants' summary judgment motion on the damages issue but notes that Plaintiff Axis may not recover damages at trial based on inconsistent theories.

### *D. Civil Conspiracy Claims*

The Defendants' challenge to Axis's civil conspiracy claims, moreover, is entirely dependent on the success of its challenge to Axis's fraud claims. [Doc. 70 at 13; Doc. 71, Ex. 1 at 17-18.] Because that challenge fails, their challenge to the conspiracy claims also fails. Thus, the Court **DENIES** the Defendants' summary judgment motions on Axis's conspiracy claims.

-12-

Case No. 1:08-CV-2782
Gwin, J.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** the Defendants' summary judgment motions.

IT IS SO ORDERED.


Dated: November 4, 2009                                  s/        *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE